STALEY, et al., A PARTNERSHIP D.B.A. REYNOLDS & COMPANY *v.* BROWN

No. 43231          December 7, 1964          169 So. 2d 475

*Watkins and Eager,* Jackson, for appellant.

*Green, Green & Cheney,* Jackson, for appellee.

McELROY, J.

This appeal is from an adverse judgment of the Circuit Court of the First Judicial District of Hinds County, on an action in contest to an answer to writ of garnishment.

Appellants, Thomas F. Staley and others, doing business as Reynolds & Company, assign as error the following: (1) the court below erred in sustaining appellee's motion for a directed verdict; (2) the court below erred in engaging in the presumption that the funds in the account in appellee's name were her separate estate; and (3) the judgment of the lower court was contrary to the law and evidence before the court.

Reynolds & Company obtained judgment against Henry N. Brown, Jr. for $8,243.50, and subsequently, on September 16, 1961, filed a suggestion for writ of garnishment against Brown's wife, Mrs. Henry N. Brown, and others. The writ was issued and Mrs. Brown

was served with process on September 29, 1961. She answered, denied any indebtedness, denied she had any of his effects, denied she knew of others indebted to Brown or having his effects, and denied any knowledge or belief of others having effects of Brown in their possession or under their control.

A contest of answer to garnishment was filed by appellant, alleging the answer was not a full disclosure and there was an account in Deposit Guaranty Bank, Jackson, Mississippi, in which Brown had deposited funds in Mrs. Brown's name. Mrs. Brown filed a supplemental answer of general denial. On a hearing of the issues the court below directed a verdict for appellee.

The court below overruled a motion for a new trial, and indulged in a presumption that the funds were the sole property of garnishee, appellee.

The primary question is the ownership and acknowledge of ownership of certain funds in account number 33-081-10 in the name of appellee in the Deposit Guaranty Bank and Trust Company, Jackson, Mississippi. The history of this account, including all deposit and withdrawal activity, was given in a stipulation introduced by appellant. The stipulation reflects balances as follows: balance September 28, 1961, $4,749.96, balance October 9, 1961, $11,269.68, and balance November 7, 1961, $4,297.88.

The October 9 balance is more than sufficient to pay the entire judgment of appellant on which the writ of garnishment was founded. The account was in the name of appellee, but Henry N. Brown, Jr., judgment debtor, had right of withdrawal.

There were approximately sixty-eight withdrawals by check during the period covered by the writ of garnishment, and fifty-eight of the checks were written by H. N. Brown. Only ten were signed by Mrs. Brown, one of which was made to the Collector of Internal Revenue

for $221.83, and had a notation "Acct. Henry N. Brown, Jr."

All deposits were in large amounts, clearly from stock and commodity transactions, the business in which Mr. Brown is engaged. The majority of checks were signed merely "H. N. Brown." Only a few were signed "Mrs. H. N. Brown, by H. N. Brown."

On November 1, 1961 a draft for 1500 shares of Trans-Continental Investments in the amount of $636 was presented to the bank for payment.

Interrogatories were propounded by appellant to appellee, all of which were answered with general denials. For example:

Interrogatory No. 3. Please list all deposits and withdrawals of any bank account or savings and loan association account in which the said defendant, Henry N. Brown, either deposited or withdrew funds during the period of September 28, 1961 to November 6, 1961.

Answer No. 3. . . . None, which were owned by Henry N. Brown.

Interrogatory No. 4. Please enumerate each occasion on which the defendant, Henry N. Brown, delivered to garnishee money, securities or other items of value during the period September 28, 1961 to November 6, 1961, and list the consideration for each occasion.

Answer No. 4. None.

On cross-examination as an adverse witness for appellant, appellee stated she did not know what the deposit of October 9, 1961 to her account in the amount of $6,125 represented. She did not make the deposit, nor did she know anything about a draft charged to the account on November 1, 1961 in the amount of $636. Her testimony, in part, was:

Q. . . . Your deposit dated November 1, 1961 shows a check from a company or a person called Studus — S-t-u-d-u-s — in the amount of $3200.00, less cash for

$50.00, which was deposited to your account. Did you make that deposit?

A.  No.

Q.  Do you know who made that deposit?

A.  I suppose Mr. Brown did.

Q.  Did you get the $50.00 in cash or did Mr. Brown get the $50.00 in cash?

A.  I don't know.

Q.  The next thing is a deposit made 9/25/61, showing a check in amount of $1,000.00, Seeman — S-e-e-m-a-n — did you make that deposit?

A.  No.

Q.  That was made into your account?

A.  Yes.

. . .

Q.  Now did you make this deposit from the Seeman check, did you Mrs. Brown?

A.  No.

Q.  Now, on 9/19/61 there was a deposit of $3500.00 in two checks, less $100.00 in cash, making a total deposit of $3400.00. Did you make that deposit?

A.  No.

Q.  Do you know what those funds represent?

A.  No.

Q.  Did you get the $100.00 cash?

A.  No.

Q.  And there is another deposit 9/13/61, does not show what it was, deposited $3,000.00. Did you make that deposit?

A.  No.

Q.  Mrs. Brown, did you make any of the deposits in that account during that period?

A.  No.

Q.  Well, you were aware that deposits were being made into that account?

A.  Yes.

Q.  And you say that that was your money?

A. Yes.

Q. Was Mr. Brown making a gift to you of these amounts? The amounts that he deposited in that account?

A. I imagine it was to finance the household.

Q. And who was authorized by you to draw on that account, Mrs. Brown?

A. Not any one.

Q. How about Mr. Brown?

A. Yes.

Q. Mr. Brown was authorized by you to draw on that account?

A. That's right.

Q. How did you decide who would draw, and how much, out of the account?

A. Well, I am not sure.

Q. He actually maintained control of the account, did he not?

A. It is my account.

Q. I know it is entitled your account, Mrs. Brown, but he made all of the deposits in the account, and made most of the withdrawals. Isn't that correct?

A. Well, yes.

Q. . . . What business is Mr. Brown in?

A. Investment Company.

Q. What company is that?

A. He deals in commodities. Transcontinental.

Q. Does he have an office here in Jackson?

A. No.

Q. Where is his office?

A. Well, I don't know whether he has one or not. He goes to where the commodities are selling.

Q. Is that where he does his trading?

A. To the best of my knowledge.

Q. He performed his trading out of your account, didn't he?

A. That is true.

Q.   And you would get the benefit of profit or loss in those trades; is that right?

A.   Yes.

Q.   And he also got the benefit of profit or loss from that account; isn't that true?

A.   I don't understand.

Q.   He was able to write more checks on the account if he made a profit, wasn't he?

A.   I don't know.

Q.   Do you know what any of those deposits represent?

A.   No.

Q.   There is a check in here dated 10/9/61 to James M. Hand, signed by H. N. Brown on your account, in the amount of $200.00. Do you know what that represents?

A.   No.

Q.   Check dated 10/10/61, signed on your account, for $5,000.00 to Goodbody and Company, signed by H. N. Brown; do you know what that represents?

A.   No.

Q.   Do you know what that was used for, the purpose of it?

A.   No.

Q.   But that was your account?

A.   Yes.

Q.   And you owned the funds in it?

A.   Yes.

Q.   But you don't know what was happening to it?

A.   No.

Q.   So in truth and in fact Mr. Brown exercised control he felt necessary over the account?

A.   (No answer)

Q.   He writes most of the checks, doesn't he, Mrs. Brown?

A.   Yes.

Appellee then admitted that he used her account for a "convenience" and that he placed *his* funds in it.

Q. I asked what his source of income at the time those large deposits were made to that account?

A. I don't know.

Q. And he actually was not making a gift of that money to you was he?

A. No.

Q. So it actually was not owned by you, was it, Mrs. Brown?

A. The bank account was mine. He used it for a convenience; it is my bank account.

Q. Mr. Brown used it for his funds too?

A. As a convenience.

. . .

Q. . . . It is a fact that he kept his funds in the account with your funds, in your account?

A. He made deposits to my account.

Q. That's right. And he completely remained in control over a good deal of the money in that account?

A. He has a privilege to write checks on it.

Q. And he used that any way he saw fit, without any direction from you?

A. I am not sure about that.

Q. Well, what control did you exercise over your account?

A. I do not know how to answer that.

Q. Well, did you exercise any control over your account?

A. I did.

Q. What?

A. I am not sure. I am just a housewife.

A wife's separate estate has been defined in 41 C.J.S. *Husband and Wife* section 226 (1944) as follows: "A wife's separate estate is that from which the dominion and control of the husband are excluded, and from

which he is to derive no benefit by reason of the marital relation.''

■■ ■ It is obvious in this instance that the wife knew nothing of the source of the funds which were deposited in the account which bore her name, she exercised very little control over them, and she stated emphatically that the monies were not a gift from her husband. Her only evidence is that it was ''her account,'' but her testimony as to the source of funds and their use was so vague and indefinite that it can only be presumed the funds were those of the husband.

In Collins v. General Electric Company, 239 Miss. 825, 123 So. 2d 609 (1960), this Court reversed a finding of the lower court and found that the funds in an account styled ''Mr. or Mrs. C. L. Collins'' was the sole property and funds of Mrs. C. L. Collins. The evidence therein reflected that the funds on deposit were the result of amounts collected by Mrs. Collins as the proceeds of fire insurance covering household furniture, clothing, etc., and the sum of $260.00 representing collections made by Mrs. Collins in the operation of her upholstering business in which Mr. Collins had no interest. In that case there was no other evidence that Mrs. Collins was not the sole owner of the account in question.

There is no evidence in the record to sustain the lower court's presumption or finding that the account was the separate estate of appellee. Black's Law Dictionary, in defining ''separate estate,'' states in part: ''The separate estate of a married woman is that which belongs to her, and over which her husband has no right in equity. It may consist of lands or chattels. Williams v. King, 29 F. Cas. 1, 369.'' Black, Law Dictionary, p. 1529 (4th ed. 1951).

The presumption that the funds in the account in Mrs. Brown's name would be her funds would obviously fall when met with her admissions that she did not

know the source of the funds, that they were not a gift to her, that they were deposited by her husband, and he merely used her account as a convenience.

We are of the opinion that the court erred in directing the verdict for the appellee, and that it is clearly a question of fact as to the owners of the deposited funds in this case. 38 C.J.S. *Garnishment* § 237; Associates Discount Corp. v. McDade, 248 Miss. 270, 158 So. 2d 57.

Reversed and remanded.

*Kyle, P. J., and Ethridge, Jones and Patterson, JJ.,* concur.